IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY TUSWEET SMITH, | ) | |
| | ) | |
| Petitioner, | ) | 2:15-cv-00313 |
| | ) | |
| v. | ) | Judge Mark R. Hornak |
| | ) | Chief Magistrate Judge Maureen P. Kelly |
| SUPT. ROBERT GILMORE; THE | ) | |
| ATTORNEY GENERAL OF THE STATE | ) | |
| OF PENNSYLVANIA, | ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM ORDER

Anthony Tusweet Smith, ("Petitioner"), proceeding *pro se*, has filed a Petition for Writ of

Habeas Corpus by a Person in State Custody (the "Petition") pursuant to 28 U.S.C. § 2254,

challenging his conviction for Attempted Criminal Homicide. This conviction arose out of a

shooting by Petitioner where Petitioner shot another person who survived the shooting and who

testified at Petitioner's trial and identified Petitioner as the shooter.[1]

The case was referred to Chief Magistrate Judge Maureen Kelly in accordance with the

Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Civil Rules 72.C and D.

Chief Magistrate Judge Kelly's Report and Recommendation, ECF No. 4, ("Report") filed on

April 29, 2015, recommended that pursuant to Rule 4 of the Rules Governing Section 2254 Cases,

the Petition be dismissed as time barred or as procedurally defaulted. Petitioner was informed that

he could file Objections to the Report. Petitioner filed Objections on May 14, 2015. ECF No. 5.

---

[1] *See Commonwealth v. Smith*, No. 1442 WDA 2002 (Pa. Super. Feb. 3, 2004) (opinion of the Superior Court in
Petitioner's direct appeal of his conviction), attached hereto as Appendix II. *See also Commonwealth v. Smith*, No. 967
of 2001 (Ct. Com. Pl. Beaver County, Jan. 24, 2003) (slip opinion), attached as Appendix I. The relevant state court
opinions from the PCRA proceedings were appended to the Report and Recommendation.

After a *de novo* review, I conclude that the Petitioner's Objections do not merit rejection of the Report.

The Report concludes that the Petition was time-barred as well as procedurally defaulted. Petitioner's major objection (raised in his Objections) appears to be that there is an exception to the AEDPA statute of limitations for a Petitioner who is "actually innocent." ECF No. 5 at 4 – 5 (the AEDPA statute of limitations "does not impose an absolute bar to pursuit of a Petitioner's First Federal Habeas Corpus Petition that raises actual innocence and the presentation of fraudulent evidence in a Petitioner's state trial."). The Court understands Petitioner to also be arguing "actual innocence" or the "miscarriage of justice"[2] as an exception not only to the Report's conclusion that the Petition was barred by the AEDPA statute of limitations, but also as an exception to the Report's conclusions of a procedural default as well. *See id.* at 5 (citing *Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1977) (concerning the miscarriage of justice exception to a procedural default)).

Petitioner is correct that there is an actual innocence exception to the application of the AEDPA statute of limitations, *McQuiggen v. Perkins*, 133 S.Ct. 1924 (May 28, 2013) as well as to the procedural default doctrine. *Werts v. Vaughn*, 228 F.3d 178, 202 (3d Cir. 2000). Moreover, the standards for establishing the actual innocence exception to the application of the AEDPA statute of limitations are the same as the standards for establishing the actual innocence exception to the procedural default doctrine. *See, e.g.*, *Sudduth v. Clements*, Civ.A. No. 12–cv–00645, 2012 WL 5289592, at *15, n.19 (D. Colo. Oct. 26, 2012) ("The Court notes that the question of whether a

---

[2] *See, e.g., Lewis v. Wilson*, 423 F. App'x 153, 158 (3d Cir. 2011) (noting that the Supreme Court "applied the same 'actual innocence' or 'miscarriage of justice standard[ ]' when considering a petitioner's 'failure to develop a factual record' as it did when considering a 'litigant's procedural default'"); *Lenhart v. Rozum*, No. 10–218J, 2014 WL 807995, at *16 (W.D.Pa. Feb. 28, 2014) ("("The 'actually innocent' standard is the same as the 'fundamental miscarriage of justice' standard, which applies 'when a constitutional violation probably has caused the conviction of one innocent of the crime.'"))") (quoting *United States v. Sorrells*, 145 F.3d 744, 749 n. 3 (5th Cir. 1998)).

claim of actual innocence excuses a habeas petitioner's failure to comply with the AEDPA statute of limitations is the same as whether such a claim constitutes a showing of a fundamental miscarriage of justice that excuses the habeas petitioner's procedural default of a claim in state court."). An actual innocence claim, also known as a miscarriage of justice claim, is a gateway claim,[3] meaning that Petitioner's claim is that because he is actually innocent, the Court should overlook his violation of the AEDPA statute of limitations and/or his procedural default (based upon his violating the PCRA statute of limitations as noted in the Report) and address his habeas claims on the merits.

However, the United States Supreme Court in *McQuiggen* stressed how narrow the miscarriage of justice exception is to the AEDPA's statute of limitations, and consequently, how rarely a successful miscarriage of justice exception would occur:

> We hold that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, *no* juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S., at 329, 115 S.Ct. 851; *see House*, 547 U.S., at 538, 126 S.Ct. 2064 (emphasizing that the *Schlup* standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *Schlup*, 513 U.S., at 332, 115 S.Ct. 851.

*McQuiggen*, 133 S.Ct. at 1928 (emphasis added). *See also id.*, at 1936 ("[t]o invoke the miscarriage of justice exception to AEDPA's statute of limitations, we repeat, a petitioner 'must show that it is

---

[3] In *Schlup v. Delo*, 513 U.S. 298 (1995), the Supreme Court explained that an actual innocence claim in the context of seeking to have a procedural default "forgiven" so as to have the procedurally defaulted claims reviewed on the merits is a "gateway" claim. In other words, the claim of actual innocence in the *Schlup* context is not a claim that "because I am actually innocent, by virtue of that fact alone I am entitled to federal habeas relief" but rather is a claim that contends "because I am actually innocent, the court should forgive my procedural default of the claim in the state courts (or in Petitioner's case, also my violation of the AEDPA statute of limitations) and consider my procedurally barred claims on their merits." *Schlup*, 513 U.S. at 315. The Court in *Schlup* contrasted such a "gateway" claim to a "freestanding" claim of actual innocence such as was raised in *Herrera v. Collins*, 506 U.S. 390 (1993), where the claim was precisely "because I am actually innocent, by virtue of that fact alone, I am entitled to federal habeas relief."

more likely than not that *no* reasonable juror would have convicted him in the light of the new evidence.'") (quoting *Schlup*, 513 U.S., at 327) (emphasis added).

In order to make a showing of a gateway "actual innocence" claim, a petitioner "must satisfy a two-part test in order to obtain review of otherwise procedurally barred claims. First, the petitioner's allegations of constitutional error must be supported with new, reliable evidence not available at trial. *Schlup*, 513 U.S. at 327-28." *Amrine v. Bowersox*, 238 F.3d 1023, 1029 (8th Cir. 2001). Second, the petitioner must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* It is not enough that in light of the new evidence a reasonable doubt may exist as to the Petitioner's guilt; the test is even more substantial than that. In *Schlup*, the Supreme Court reiterated that "[t]he meaning of actual innocence as formulated by *Sawyer* and *Carrier* does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." *Schlup*, 513 U.S. at 329.

The Petitioner has not alleged or shown that it is more likely than not that no reasonable juror would have convicted him in light of the only allegedly new evidence that he points to, namely, an asserted discrepancy in the inventory numbers concerning physical evidence admitted at trial, one of which related to the glove that was identified by the victim to have been the glove that Petitioner wore when he shot the victim and which, according to testimony during the trial and according to a stipulation by Petitioner's trial counsel, was the very same glove that tested positive for gun residue. *See* ECF No. 5-1 at 6 – 8. While facially, such a discrepancy in the inventory numbers *might* establish a question in the chain of custody of the glove that tested positive for gun residue, a review of Petitioner's allegations and the applicable law reveals that it cannot carry the day here.

4

First, a close reading of the Petitioner's Petition, Memorandum and Objections, even giving him the benefit of all close calls, does not in the Court's estimation reveal any such "discrepancy" at all, or that it is "new." This is best seen in the "unsworn affidavit" which Petitioner asked his trial counsel to sign (he refused). ECF No. 3 at 38. What that (and all of Petitioner's filings) reveals is that at trial, his lawyer stipulated to the chain of custody of Commonwealth Exhibits 37 (a gun) and 22 (a black fleece glove). Those Exhibits had different police property numerical identifiers, ECF No. 3 at 7 and 38, something Petitioner's papers indicate was known at trial. From the very fact that there were two different numerical property identifiers, Petitioner now argues that there "must be" a chain of custody discrepancy of sufficient heft to call into question the veracity of that physical evidence.

Not only did Petitioner's trial counsel stipulate at trial to the chain of custody, the record reveals that he did so based on his professional consideration of his review of the involved property records. ECF No. 3 at 35. Simply put, the Petitioner contends that from the fact alone of two (2) different numerical State Police property records for two (2) different pieces of tangible evidence, ECF No. 3, at 16, there is necessarily a "discrepancy" which would then cause any reasonable juror to find him not guilty.

Even accepting that the fact of two inventory numbers of two (2) pieces of physical evidence could theoretically call into question whether the glove that was tested by the crime lab was the very same glove found to be in the apartment where Petitioner was arrested by the police (something that would require a notable logical leap if not outright speculation), such evidence, which based on the Petitioner's own filings appears to not be "new" at all, does not demonstrate that no reasonable juror would have convicted Petitioner in light of it, given the overwhelming unrelated, evidence of Petitioner's guilt.

That trial evidence includes: 1) the victim's eyewitness identification of Petitioner as the shooter, 2) the victim having a pre-existing relationship with the Petitioner (making identification far more precise), who had called the victim earlier in the day for the victim to pick up nine ounces of cocaine, and 3) the corroboration of the victim's testimony provided by another of Petitioner's friends, who witnessed Petitioner get into the victim's car, and who then saw Petitioner and the victim exchange punches in the car and saw the victim drive into the wall and flee the car thereafter. Trial Court Slip op. at 1-3, 13, Appendix I.[4]

This trial evidence also includes the fact that the victim testified that after Petitioner got into the victim's car, he noticed a gun on Petitioner's person and further that he was afraid that Petitioner was going to kill him. Immediately before the exchange of blows between the victim and Petitioner, which was witnessed by the Petitioner's friend, the victim testified that Petitioner called the victim a "snitch" based upon Petitioner's apparent belief that the victim had told the police about drug

---

[4] In a case governed by Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, a District Court may consider the recounting of evidence in State Court opinions in evaluating and rejecting an actual innocence claim by a petitioner. *See, e.g., Weaver v. Chillicothe Correctional,* No. 2:13–cv–0790, 2013 WL 4456148, at *7 (S.D. Oh. Aug. 16, 2013) (in a Rule 4 case, the Court took judicial notice of the state court opinions and dockets, and found "there is nothing in the record here, or in any of the matters the Court has reviewed, to indicate that petitioner is actually innocent of the crime to which he pleaded guilty. Under these circumstances, even if his petition were not barred by the statute of limitations, the Court could not decide the merits of either of his claims because they were procedurally defaulted."), report adopted by, 2013 WL 6116897 (S.D. Oh., Nov. 20, 2013); *Fusilier v. Cain,* No. 6:12–cv–0580, 2012 WL 1906553, at *10 (W.D. La. April 23, 2012) (in a Rule 4 case, finding no actual innocence in order to overcome procedural default); *Kelly v. Mahoney,* No. CV–11–72, 2012 WL 555809, at *2 (D. Mont. Feb. 21, 2012) (in a Rule 4 case, court found the petition to be time barred and rejected any claim of actual innocence to overcome the statute of limitations, holding that "where the petitioner does not state such facts [showing entitlement to relief] and 'does not dispute that the facts reported in the state court opinions faithfully and accurately reflect the record,' the district court need not go further and independently review the record'") (quoting *Clark v. Waller,* 490 F.3d 551, 555 (6th Cir. 2007)).

See also *Holden v. Mechling,* 133 F. App'x 21 (3d Cir. 2005) (affirming that a District Court may *sua sponte* raise the statute of limitations in a Rule 4 case, even though the District Court did not have the entire state court record before it as revealed by the District Court docket, available on PACER, but vacating and remanding for the District Court to provide Petitioner notice and an opportunity to be heard regarding the statute of limitations). We note that Petitioner herein had such notice by means of the Report and such an opportunity by means of the Objections, an opportunity he took up. *See also Gargiulo v. Hayman,* Civil No. 09–0775, 2009 WL 1346620, at *9 (D.N.J. May 13, 2009) (in a Rule 4 case, dismissing the petition based in part on its untimeliness, the Court noted that "[d]ismissal without the filing of an answer or the State court record has been found warranted when 'it appears on the face of the petition that petitioner is not entitled to relief.'") (quoting *Siers v. Ryan,* 773 F.2d 37, 45 (3d Cir. 1985)).

activities in the area. The victim testified that as he then ran from the car, he heard what sounded like an explosion from a firearm, and that while running away, he felt a cold dripping on the back of his neck, which was later determined to be blood. The victim was transported to a hospital where the treating emergency room nurse testified that the first thing the victim said to her was that he had been shot in the back of the head by Petitioner. *Id.* at 2 – 4.

Given the victim's pre-existing relationship with Petitioner, and the corroboration of much of the victim's testimony by another friend of Petitioner, who observed the altercation between victim and Petitioner, we conclude that the evidence of Petitioner's guilt, even disregarding the glove, is especially weighty. Further, we conclude that the evidence of the alleged discrepancy between the inventory control numbers is not "new" evidence of actual innocence within the meaning of *Schlup*. Why so? Even if there were discrepancies in the inventory control numbers concerning the glove, such discrepancies would not have barred admission of the glove. Rather, under Pennsylvania law, a discrepancy in the inventory numbers, which would be relevant to the chain of custody as Petitioner seemingly contends,[5] would go only to the weight that the jury should accord to the evidence of the glove, and the gun residue found on the glove, and not to its admissibility *vel non*. *See, e.g.*, Pa.R.E. Rul3 901(a); *Commonwealth v. Royster*, 372 A.2d 1194 (Pa. 1977) ("(P)ositive testimony that the knife in question was actually the murder weapon is not required prior to introduction into evidence . . . If a proper foundation for the admission of the evidence has been laid, as here, then admission into evidence is permissible. . . . The fact that the knife could not be positively identified affects the

---

[5] *See* ECF No. 5 at 5 (where Petitioner complains that "In discovery, the Prosecutor provided the Petitioner with PSP-PRI-0947377 Inv.# 4321PP & PSP-GIR# D4-0960800 Inv.# 4321PP to depict the chain of custody of a black fleece glove found at PSP-PRI# D4-0947377 Inv.# 4321PP."); id. at 6 (Petitioner alleged that "disclosure would permit the timely filing of a State PCRA Petition and would accurately depict the chain of custody of both PSP-PRI's that were provided to the Petitioner.").

weight of such evidence, but not its admissibility. . . ."); *Com. v. Feliciano*, 67 A.3d 19, 29 (Pa.Super., 2013) ("Gaps in the chain of custody, the underlying issue of Appellant's argument, go to the weight of the evidence and not its admissibility.").

In light of the particularly strong and corroborated evidence of Petitioner's guilt, we conclude that the claimed discrepancy in the inventory numbers is not of such an evidentiary quality that Petitioner can show that no reasonable juror would have convicted him in light of the new evidence he posits. Having failed to carry his heavy burden to show the existence of new evidence demonstrating actual innocence under the demanding *Schlup* standard, the Court may not address Petitioner's claims on the merits. Petitioner has not established that he is entitled to the application of the miscarriage of justice exception, and as such, his habeas claims are barred by the AEDPA statute of limitations and/or by his procedural default of his claims.[6]

Accordingly, after *de novo* review of the pleadings and the documents in the case, together with the Report and Recommendation, the following order is entered:

AND NOW, this 13th day of July, 2015;

IT IS HEREBY ORDERED that the Petition for Writ of Habeas Corpus is DISMISSED.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

---

[6] Any other Objection not specifically addressed herein has been found to be unpersuasive and/or adequately addressed by the Report.

IT IS FURTHER ORDERED that the Report and Recommendation, ECF No. 4, of Chief Magistrate Judge Kelly, dated April 29, 2015, is adopted as the opinion of the Court as supplemented by this Memorandum Order.

Mark R. Hornak
United States District Judge

cc:    District Attorney of Beaver County
Post Conviction Relief Unit
810 Third Street
Beaver, PA 15009

Anthony Tusweet Smith
EY-9164
SCI Greene
175 Progress Drive
Waynesburg, PA 15370